UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARIO ENRIQUE BLANCO
CORTEZ,

        Petitioner,

    v.

DETROIT DISTRICT DIRECTOR,
IMMIGRATION AND CUSTOMS
ENFORCEMENT AND REMOVAL
OPERATIONS, et al.,

        Respondents.

Case No. 1:26-cv-222

JUDGE DOUGLAS R. COLE
Magistrate Judge Jolson

## OPINION AND ORDER

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Mario Enrique Blanco Cortez, a Venezuelan citizen, pending removal proceedings. Cortez filed a Petition for Writ of Habeas Corpus (Doc. 9), requesting that the Court order his release, and has since filed an Emergency Motion for Temporary Restraining Order (Doc. 15), requesting that same relief. Cortez asserts that his detention is unlawful for four reasons: (1) his rearrest after previous release was arbitrary, in violation of the Fourth and Fifth Amendments;  (2) the underlying expedited removal order is "constitutionally void"; (3) he did not receive any notice or hearing, in violation of procedural due process; and (4) his mandatory detention is unlawful. (Doc. 9, #93–94). Ultimately, though, the Court concludes his detention is permissible, and so **DISMISSES WITHOUT PREJUDICE** Cortez's Petition (Doc. 9).

## BACKGROUND

Petitioner Mario Enrique Blanco Cortez is currently detained at Butler County Jail. (Doc. 9, #88). He is a Venezuelan citizen who first arrived in the United States on October 18, 2023. (*Id.* at #97, 100). Blanco Cortez alleges he was a police officer in Venezuela and was forced to flee after he received threats for supporting opposition leader Maria Corina Machado. (*Id.* at #97). When he first arrived, he presented himself to Customs and Border Protection (CBP) to seek asylum. (*Id.*). But those officers "summarily issued an administrative expedited removal order" and deported him to Mexico two days after he arrived. (*Id.* at #97, 125–26 (notice and order of expedited removal), 127–28 (record of sworn statement)). Blanco Cortez asserts that they wrongly claimed that he had refused to answer their questions or sign a statement, and instead "created a false record" to justify his expedited removal. (*Id.* at #97).

While in Mexico, Blanco Cortez says he was kidnapped, held for ransom, and threatened by Mexican authorities. (*Id.* at #106). So he attempted to enter the United States again on December 5, 2023. (*Id.*). And once again, he presented himself to CBP officers and requested asylum. (*Id.*). Initially, the Department of Homeland Security (DHS) issued a "Notice of Intent/Decision to Reinstate Prior Order." (*Id.* at #106, 130 (notice)). DHS, however, changed course shortly afterwards, and issued a Notice to Appear (NTA) for standard removal proceedings instead. (*Id.* at #106, 140–42 (NTA)). That NTA ordered Blanco Cortez to appear at the Cleveland Immigration Court on February 20, 2024. (*Id.* at #140). Accordingly, DHS released Blanco Cortez on his own

2

recognizance, including electronic monitoring. (*Id.* at #107, 132–38 (notice of custody determination and order of release)).

Blanco Cortez alleges that for the following two years, he was the "model of compliance." (*Id.* at #107). But on January 29, 2026, after a routine check-in with ICE, agents "revoked his release and took him into custody." (*Id.*). He has been detained at Butler County Jail since then. (*Id.* at #88).

Blanco Cortez initiated this action by filing a Motion for Leave to Proceed in forma pauperis on March 3, 2026. (Doc. 1). After some administrative back-and-forth, Blanco Cortez filed this Petition for Writ of Habeas Corpus (Doc. 9) on March 13, 2026. While the exact nature of each count is somewhat unclear, Blanco Cortez asserts four claims: (1) his rearrest and detention is arbitrary, in violation of the Fourth and Fifth Amendments; (2) the underlying reinstated removal order is "unconstitutional and void ab initio"; (3) his re-detention without notice or a hearing violates procedural due process; and, alternatively, (4) he is not subject to mandatory detention. (*Id.* at #108–16).[1]

After further scheduling disputes, (*see* Docs. 14, 15, 16), including Blanco Cortez filing an Emergency Motion for Temporary Restraining Order (Doc. 15) to prompt a response, Respondents filed their Return of Writ (Doc. 17) on April 8, 2026. Respondent Butler County Jail separately moved to dismiss, arguing it is not a proper Respondent. (Doc. 11). And Blanco Cortez replied. (Doc. 18).

---

[1] Cortez also asserts a claim for a Temporary Restraining Order, but this is more properly considered a form of relief than a cause of action. (*See* Doc. 9, #116–17).

With that, the matter is ripe for the Court's review.

## LAW AND ANALYSIS

The Court reviews each of Blanco Cortez's arguments, but it ultimately concludes that none of them warrant his release. The Court starts with his theories involving the reinstated removal order before proceeding to the remaining arguments.

**A.     Blanco Cortez's Arguments Involving the Reinstated Removal Order Are Moot Because the Government No Longer Relies on the Reinstated Removal Order.**

Blanco Cortez argues that his original expedited removal order was "unconstitutional and void ab initio," so it is unlawful for DHS to reinstate that removal order to justify his detention and deportation. (Doc. 9, #110–12). This Court, however, finds that his current detention is not pursuant to the previous removal order, and so his arguments directed to that order are moot. In other words, even if he is correct about that order, it would not change anything about his current detention.

Blanco Cortez himself states that while "fully aware of the prior removal order, ICE unequivocally chose not to reinstate it and instead initiated removal proceedings under § 240 with the issuance of a NTA." (*Id.* at #109). As he also concedes, ICE has discretion not to reinstate the earlier removal order. (*Id.* at #110 (citing *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013))). Instead of relying on the earlier removal order, DHS charged him as inadmissible under § 212(a)(7)(A)(i)(I) of

the INA because he did not have valid entry documents. (*Id*. at #109). His case proceeded effectively as a new case in immigration court after that.

The government further provides documentation showing that Blanco Cortez's removal proceedings on the new charges continued as normal. Indeed, on June 17, 2025, Blanco Cortez submitted written pleadings to the immigration court, admitting the charges of inadmissibility on these grounds. (Doc. 17, #177; Am. Written Pleadings, Doc. 17-6). From there, the immigration judge found Blanco Cortez removable. (Doc. 17, #177; Order of the Immigration Judge, Doc. 17-8, #209).

Considering these developments, the government and immigration judge do not appear to be relying on the previous removal order. So the Court agrees with Respondents that DHS's pivot from reinstating the removal order to initiating standard removal proceedings effectively mooted challenges to the previous removal order. (*See* Doc. 17, #181–83). Thus, the Court dismisses any arguments based on the validity of the earlier order.[2]

**B.      Blanco Cortez Is Subject to Mandatory Detention.**

In Blanco Cortez's Petition, he argues that he is not subject to mandatory detention because the 90-day removal period has expired. (Doc. 9, #115–16). Specifically, Blanco Cortez notes that his October 18, 2023, removal order became administratively final on November 18, 2023. (*Id*. at #115). Thus, he argues, the 90-

---

[2] Blanco Cortez also states that he "has simultaneously petitioned the Sixth Circuit Court of Appeals for review of the reinstated order of removal under § 1252(b)(1)." (Doc. 9, #112). The Sixth Circuit has exclusive jurisdiction to consider the substance of such orders. *See* 8 U.S.C. § 1252(a)(5). Accordingly, this Court offers no opinion on the validity of the earlier removal order.

day clock started ticking when he reentered the country on December 5, 2023. (*Id.* at #115–16). Thus measured, that 90-day clock has now expired, so he claims he cannot be subject to mandatory detention anymore.

That argument fails to persuade for several reasons. First, the government already had executed the October 18, 2023, removal order when it deported him to Mexico via the expedited removal process. (*Id.* at #97, 125–26 (notice and order of expedited removal), 127–28 (record of sworn statement)). So that is not the right date or removal order on which to base a current removal period. Second, the 90-day removal period only applies to final orders of removal. *See* 8 U.S.C. § 1231(a)(1)(A). The government initiated new removal proceedings based on new charges of inadmissibility, and there does not appear to be a final order of removal from those new proceedings.[3] So the 90-day clock associated with the new removal proceedings has yet to start.

So the question becomes whether Blanco Cortez is subject to mandatory detention pending completion of the current removal proceedings. Respondents argue that Blanco Cortez is properly detained as an applicant for admission under 8 U.S.C. § 1225(b)(2). (Doc. 17, #178–79). While Blanco Cortez did not address this in his Petition, his Reply almost exclusively focuses on this argument. (Doc. 18, #215–22). There, he claims he is subject to detention under § 1226(a) instead. (*Id.* at #218).

---

[3] An individual merits hearing was scheduled for April 10, 2026. (Doc. 17, #177; Doc. 17-10, #213 (notice of internet-based hearing)). The Court has not received any update as to the outcome of this hearing.

The Court recently addressed when § 1225(b)(2) applies in *Coronado v. Secretary, Department of Homeland Security*, No. 1:25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025), further explained its reasoning in *Masis Lucero v. Field Office Director of Enforcement and Removal Operations*, No. 1:25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025), and has adopted that same position in various additional petitions raising these or similar issues, *see, e.g.*, *Phurtskhvanidze v. Field Office Dir. of Enf't and Rem. Ops.*, No. 1:25-cv-827, 2026 WL 160833 (S.D. Ohio Jan. 21, 2026); *Alcan v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 1:25-cv-961, 2026 WL 472333 (S.D. Ohio Feb. 19, 2026). At the end of the day, Blanco Cortez entered the United States without admission, and conceded as much in his latest removal proceedings. (*See* Doc. 9, #105–07; Doc. 17-6; Doc. 17-8, #209). As a result, this case is materially indistinguishable from those prior cases, and the same analysis controls. So Blanco Cortez is an "applicant for admission" under § 1225(b)(2), and thus, he is subject to mandatory detention under that statute pending removal proceedings.

Indeed, since the Court has issued the decisions cited above, two circuits, the Fifth and the Eighth, have come to the same conclusion that this Court did. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, __ F.4th __, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). Blanco Cortez objects to these cases because those "decisions are neither binding on this Court nor representative of the prevailing judicial view." (Doc. 18, #218). True, they are not binding, but these circuits' analyses are consistent with the Court's own analysis. Additionally, the Sixth Circuit has heard argument on the issue, but has yet to issue

a decision. (*See* Case Argued, *Lopez-Campos v. Raycraft*, No. 25-1965 (6th Cir. Mar. 18, 2026), Doc. 42). So pending further guidance from that court, this Court stands by its previous decisions.

**C.     Blanco Cortez's Detention Does Not Violate Due Process.**

Blanco Cortez also asserts throughout his Petition and Reply that his detention violates due process. (*See* Doc. 9, #108–10, 113–14; Doc. 18, #221–22). Specifically, Cortez maintains that it violates due process to rearrest and detain him without a notice or hearing when he had previously been released on his own recognizance. (*See* Doc. 9, #108–10, 113–14).

The Court first notes that, like the § 1225(b)(2) applicant for admission issue, it has already found that rearrest pursuant to ICE's change in policy and the BIA's change in position does not violate due process. *See, e.g.*, *Phurtskhvanidze*, 2026 WL 160833, at \*2. And to the extent Blanco Cortez argues that his rearrest and detention violate due process because the reinstated removal order is void, (Doc. 9, #113–14), the Court already determined that the earlier removal order is not at issue here, *see* supra Law & Analysis, Part A.

**D.     Blanco Cortez's Rearrest Does Not Violate the Fourth Amendment.**

Blanco Cortez's remaining argument against his detention relies on the Fourth Amendment. (Doc. 9, #93, 108–09). Specifically, he argues that the government cannot rearrest him "based on the same probable cause without a material change in circumstances." (*Id.* at #108). Because he has complied with the conditions of release and there is no new probable cause for arrest, he argues that the government could

8

not seize him again. (*Id.*). The Court has not yet had an opportunity to address this argument in previous habeas petitions in immigration cases. But, considering it for the first time now, the Court disagrees with Petitioner.

True, courts have applied something like the principle on which Petitioner relies here in the criminal context. The Supreme Court, for example, has stated that "a warrant once executed is exhausted." *Carlson v. Landon*, 342 U.S. 524, 546 (1952). Stated differently, after a defendant is released on bail, "the continuing knowledge of his possible guilt of the offense charged in the indictment is not itself sufficient [to rearrest]; otherwise, harassment by continual rearrests could be justified by the continuing existence of 'probable cause.'" *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971).

But it is not at all clear how, if at all, this principle translates to the immigration context. To start, Congress expressly allowed for the possibility of rearrest in the Immigration and Nationality Act: "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). And the Supreme Court, while not addressing this issue, also relied on § 1226(b) and its rearrest provision without question in *Jennings v. Rodriguez*, 583 U.S. 281, 309 (2018). More generally, the Supreme Court has stated that a "fundamental premise of immigration law" is that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."

9

*Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)).

Moreover, even assuming that, statutory language notwithstanding, the Fourth Amendment prevents arrests in the immigration context undertaken for harassment purposes, the facts here do not show that ICE rearrested Blanco Cortez in order to harass him. Leading up to his detention, Blanco Cortez had several hearings in immigration court, including filing amended written pleadings where he admitted the charges of inadmissibility. (Doc. 17-6). On June 23, 2025, the immigration judge found Cortez removable and ordered him to file any applications for relief within 60 days. (Doc. 17-8). Neither Blanco Cortez nor Respondents allege that he moved for withholding of removal or any other form of relief. So by January 29, 2026, it would be reasonable for the government to rearrest Blanco Cortez "for completion of his removal proceedings." (Doc. 17, #177).

Putting that all together, the Court finds that his detention does not violate the Fourth Amendment either.

### E. Blanco Cortez May Raise His Medical Care Concerns in a § 1983 Action Instead.

While not formally asserted as a claim in his Petition, Blanco Cortez alleges that he is not receiving adequate medical care in the jail. (Doc. 9, #105, 122). Specifically, he suffers "problems with his liver, stomach, knee, and back," and "[h]is critical follow-up medical visits have been canceled due to his detention." (*Id.* at #105). He claims that he requested a medical appointment in the jail over fifteen days before filing this petition, but had not heard anything. (*Id.*). In his Reply, he further

10

develops these allegations into a claim that these conditions constitute punitive civil detention, and so they further justify his immediate release. (Doc. 18, #222–23).

The Court takes these kinds of allegations seriously and urges the government to take heed of Blanco Cortez's medical conditions. While he is in the government's care, the government has an obligation to ensure that Blanco Cortez receives the care he needs. But the Court also notes that Blanco Cortez must raise conditions of confinement claims, particularly regarding medical care, through a suit under 42 U.S.C. § 1983, rather than by way of a habeas petition. So the Court declines to further address those allegations here.

*   *   *

In conclusion, the Court **DISMISSES WITHOUT PREJUDICE** Blanco Cortez's Petition (Doc. 9) and **DENIES** his Emergency Motion for Temporary Restraining Order (Doc. 15). Accordingly, the Court **DENIES AS MOOT** Respondent's Motion to Dismiss (Doc. 11).

As it has done in the past, in dismissing this Petition, the Court notes it is not passing on the wisdom of mandatory detention in this context. But it is Congress, not this Court, that is tasked with making those policy determinations, subject only to constitutional limitations. And the Court concludes that Congress has spoken on the topic through the plain language of § 1225(b)(2) and § 1226(a) and (b). Of course, Congress remains free to revisit the language of those statutes at any time, should it wish to do so. But absent that, or different instruction from the Sixth Circuit, the Court finds that the statutory mandatory detention command applies.

11

That said, statutory commands must also conform with the Constitution. And the Court acknowledges that, if Blanco Cortez's pre-removal detention[4] goes on too long, due-process concerns may well arise. His current detention, though, has been roughly 90 days, and that is insufficient to trigger such concerns. So the constitutional limits on the maximum permissible duration of such detention is a question for another day. Having said that, in connection with dismissing this action, the Court **ORDERS** the government to provide this Court and Blanco Cortez in writing, within fourteen (14) days, its best current estimate as to when a determination on the question of Blanco Cortez's removal will be administratively final. Once the government has provided that information, the Court, as noted above, will dismiss this petition without prejudice.

      **SO ORDERED.**

April 21, 2026
 **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[4] From the Court's understanding, there is not a final order of removal in Blanco Cortez's proceeding. So Blanco Cortez is in detention pending that final order of removal or, in other words, pre-removal detention. The Court notes, however, that there was a hearing scheduled for April 10, 2026. (Doc. 17, #177; Doc. 17-10, #213). So there may be an order of removal now, although perhaps not administratively final. If so, the government can provide that information in the requested estimate.